**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ERIC M. ORTIZ, | Civil No. 11-0037 (RMB) |
| Petitioner, |  |
|  | **MEMORANDUM   OPINION** |
| v. |  |
| DONNA ZICKEFOOSE, |  |
| Respondent. |  |

**Bumb**, District Judge:

　　Petitioner Eric Milton Ortiz ("Petitioner"), a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus ("Petition"),[1] pursuant to 28 U.S.C. § 2241.

　　The sole Respondent is warden Donna Zickefoose.

　　While Petitioner asserts, in his Petition-form, that his projected release date is July 15, 2012, the website of the Bureau of Prisons ("BOP") indicates that Petitioner's current projected release date is August 8, 2012.  See <<http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=NameSearch&needingMoreL

---

[1] The Petition appears to be one of those pre-printed forms that were created and copied/circulated in federal correctional facilities, and which are utilized by federal inmates who merely write in their name, their warden's name, their sentence and projected release date, and then just sign and date these pre-printed form, leaving the remainder of this nineteen-page production unchanged and without any other shred of personal information, such as the date of alleged administrative inquiry, the date of administrative responses received, etc.

ist=false&FirstName=ERIC+&Middle=&LastName=ORTIZ&Race=U&Sex=U&Age=&x=75&y=19>>.

The principal issue raised in the Petition is whether the BOP violated Petitioner's rights by, allegedly, denying his request to be considered (for the up-to-twelve-month transfer to an RRC, pursuant the Second Chance Act, codified at 18 U.S.C. § 3624) sooner than 19 months prior to the date of Petitioner's release. To that effect, the Petition, by presenting a long chain of speculations, asserts the following hypothesis:

(a) **if** Petitioner is considered by the BOP for such transfer only 17 to 19 months prior to his release and not sooner; and, in addition,

(b) **if** the BOP denies Petitioner transfer for the maximum period of 12 months allowed under the Second Chance Act; and, in addition,

(c) **if** the BOP finds that Petitioner should be transferred to an RRC only for the period of "x" months, which is less than the maximum 12-month period allowed under the statute; and, in addition,

(d) **if** Petitioner, being dissatisfied with such BOP's determination, starts the process of exhausting his administrative remedies;[2] and, in addition,

---

[2] The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions

(e)  **if** Petitioner's request for transfer to RRC for a period of 12 months or for a period longer than "x" months (but shorter than 12 months) is denied at the level of informal resolution and by his warden; and, in addition,

(f)  **if** the warden's determination is affirmed by the Regional office of the BOP; and, in addition,

(g)  **if** the Regional Office's affirmance is affirmed by the Central Office of the BOP; and, in addition,

(h)  **if** Petitioner, being dissatisfied with the outcome of his administrative proceedings, files a habeas petition with the district having jurisdiction over the facility where Petitioner would be confined at that point in time; and, in addition,

---

operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. See 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. See id. Appeal to the General Counsel is the final administrative appeal. See id. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

(i) **if** the district court presiding over such hypothetical action finds that the BOP rendered its determination in violation of a certain statute; and, in addition,

(j) **if** such presiding court elects to grant Petitioner habeas relief in the form of an order directing Petitioner's transfer to an RRC for the maximum period allowed under the Second Chance Act,

then Petitioner might be unable to enjoy the entirety of such presiding court's order fully because, by the time such presiding court might rule in favor of Petitioner, Petitioner might be less then 12 months away from his release. See, generally, Docket Entry No. 1.

Therefore, Petitioner asserts that he is entitled for evaluation by the BOP sooner than 19 months prior to expiration of his sentence; in connection with that argument, Petitioner asserts that he should be excused from exhausting his challenges to the speculative insufficiency of the period of his placement in an RRC because such exhaustion would be "futile." See id. In other words: (a) Petitioner asks the Court to direct the BOP to tell this Court how BOP would evaluate Petitioner for a Second Chance Act transfer and tell so sooner than 19 months prior to Petitioner's release;[3] and (b) Petitioner asks that the Court

---

3

If an inmate requests transfer to an RRC prior to the pre-release time frame of 12-months from release, staff

would excuse Petitioner's failure to exhaust BOP's **not-yet-issued** determination in the event it turns out that such determination is not to Petitioner's liking.

    To add to the mystery of the Petition at hand, Petitioner executed it on January 1, 2011, see id. at 19, while conceding that – under the BOP's policy – he would necessarily be subject to the BOP's Second Chance Act evaluation 17-to-19 months prior to his release.  However, Petitioner's asserted release date, i.e., July 15, 2012, see id. at 1, indicates that Petitioner's "19-months-prior-to-release" point in time occurred on December 15, 2010, i.e., half-a-month **prior** to Petitioner's execution of his Petition (and, thus, Petitioner might have already had a determination made by the BOP at the time he executed his Petition).

---

    must individually consider the request, just as they would any other request for lower security transfer. There is no need, however, to immediately perform the individualized review at the moment it is submitted. Rather, the inmate should be informed that his/her request will be fully reviewed in conjunction with the next scheduled Program Review.  When informing inmates of the timing for review of transfer requests, it is vitally important that staff not inform the inmate (either orally or in writing) that he/she is ineligible for transfer to an RRC. Telling an inmate that he/she is ineligible for RRC placement is the same as automatically denying the inmate from even being considered for such placement, and is not in accord with Bureau policy.

Hickman v. Zickefoose, 2011 U.S. Dist. LEXIS 51363, at *8-9 (D.N.J. May 12, 2011) (quoting BOP Memorandum of November 14, 2008).

Or, simply put, Petitioner's request for an order directing the BOP to evaluate Petitioner sooner than 19 months prior to his release was moot even before Petitioner executed his Petition.[4]

Stripped of this temporal <u>non sequitur</u> issue, the Petition presents nothing but a garden variety request for an excuse from administrative exhaustion of an administrative decision not pleading an inmate; this request for excuse from exhaustion is accompanied by nothing but Petitioner's self-serving assertion that such exhaustion would be futile.

Notably, Petitioner does not assert that the BOP refused to exercise its discretion to consider him for RRC placement or that the BOP employed an improper analysis during such consideration; all he expresses is his abstract displeasure with the outcome, which Petitioner wraps in exponential layers of hypotheticals.[5]

To the degree Petitioner wished to assert that exhaustion of administrative remedies would necessarily be futile because the administrative process might take a few months and court

---

[4] Petitioner has no standing to sue on behalf of those inmates who are more than 19 months away from their release date and who might wish to have these evaluation conducted sooner than 19 months prior to their release. Moreover, this Court notes, <u>in dictum</u>, that Petitioner states no basis for constitutional challenges to the currently the regulatory regime directing evaluation of inmates not sooner than 19 months prior to their release, and this Court – on its own – is not aware of any valid basis for such constitutional challenge.

[5] A legal "adjudication cannot rest on any such 'house that Jack built' foundation." <u>Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.</u>, 410 U.S. 719, 731 (1973).

proceedings resulting from a following habeas application (that Petitioner might file) might also take a few months, Petitioner's position is wholly without merit: it is entirely speculative and, in addition, the time frame of administrative and court proceedings has nothing to do with *futility* of administrative review: indeed, administrative proceedings might prove fruitful to an inmate and provide him/her with the remedy (s)he seeks even at the very first, informal, level of administrative process, hence rendering administrative appeals and habeas proceedings wholly unnecessary, and the time frame of these administrative appeals and court habeas proceedings wholly irrelevant.

Moreover, if – at the time of Petitioner's execution of his Petition – Petitioner was not evaluated by the BOP, he has no standing to challenge the substance of that not-yet-rendered BOP determination, see Stanko v. Obama, 393 Fed. App'x 849 (3d Cir. 2010) (the inmate lacked standing to challenge the decision, which had not yet been made regarding the inmate's eligibility for placement in an RRC, because any injury based on the application of the Second Chance Act to him was speculative); all Petitioner can challenge, under the existing regulatory regime, is the fact that the BOP failed to evaluate him within 19-to-17-months prior to his release, but his Petition makes it abundantly clear that Petitioner does not make such assertion.

That leaves the Court solely with: (a) Petitioner's hypothetical displeasure with the length of the period he might be designated to be housed at an RRC; and (b) Petitioner's self-serving position that he need not administratively exhaust the challenges embodying this displeasure.

However, the Court of Appeals for the Third Circuit and the district courts in this Circuit invariably agreed that administrative exhaustion of habeas challenges by federal inmates is excused only in rare circumstances.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies. See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals: it is "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Goldberg v. Beeler, 82 F. Supp. 2d

302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000); see also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). Although exhaustion of administrative remedies is not required where exhaustion would not promote these goals, see, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"), the exhaustion requirement is not excused lightly. Indeed, it has been long established that an inmate's unjustified failure to pursue administrative remedies results in procedural default warranting decline of judicial review. The Court of Appeals addressed this issue in Moscato, 98 F. 3d 757, the case where an inmate filed a § 2241 petition after the Central Office had denied his administrative appeal as untimely. The Court of Appeals pointed out that the inmate's failure to satisfy the time limits of the BOP's administrative remedy program resulted in a procedural default, see id. at 760, rendering judicial review of his habeas claim unwarranted, that is, unless the inmate can demonstrate cause for his failure to comply with the procedural

requirement[6] and, in addition, actual prejudice resulting from the alleged violation. See id. at 761.

Clarifying the rationale of its decision, the Moscato Court explained that application of the cause and prejudice rule to habeas review of BOP proceedings insures that prisoners do not circumvent the agency and needlessly swamp the courts with petitions for relief, and promotes such goals of the exhaustion requirement, such as allowing the agency to develop a factual record and apply its expertise facilitates judicial review, conserving judicial resources, and fostering administrative autonomy by providing the agency with an opportunity to correct its own errors. See id. at 761-62; see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988).

Other federal courts agree with the position of the Court of Appeals for the Third Circuit. As the Court of Appeals for the Fourth Circuit aptly noted,

---

[6] The "cause" standard requires a showing that some external objective factor impeded the inmate's efforts to comply with the procedural bar. See Murray v. Carrier, 477 U.S. 478, 488 (1986); United States v. Pelullo, 399 F. 3d 197, 223 (3d Cir. 2005) ("Examples of external impediments . . . include interference by officials") (citations and internal quotation marks omitted); Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004) ("cause" typically involves a novel constitutional rule, a new factual predicate, hindrance by officials in complying with the procedural rule, or akin). In contrast, a procedural default caused by ignorance of the law or facts, or my mere litigant's inaction and his election to sit on his rights is binding on the habeas petitioner. See Murray, 477 U.S. at 485-87.

> As a general rule, in the absence of "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent," . . . courts "require[ ] exhaustion of alternative remedies before a prisoner can seek federal habeas relief." . . . While habeas corpus is "always available to safeguard the fundamental rights of persons wrongly incarcerated," it "is the avenue of last resort."

<u>Timm v. Johns</u>, 627 F.3d 525, 530-31 (4th Cir. 2010) (citations omitted).

Here, Petitioner did not assert any reason for his failure to exhaust his administrative remedies; all that his Petition vaguely hints at is his hypothetical displeasure with a period of RRC housing that might be determined by the BOP; he adds to this hypothetical displeasure his self-serving speculative beliefs about the time frame of administrative process and the speed, with which federal courts move their dockets.  However, the sum of such assertions cannot amount to a valid reason for excusing Petitioner's procedural default.

Therefore, the Petition will be dismissed, without prejudice to Petitioner's filing a duly exhausted petition in a new and separate <u>habeas</u> action.

An appropriate Order accompanies this Opinion.

s/Renée Marie Bumb<br>
**RENÉE MARIE BUMB**<br>
**United States District Judge**

Dated: July 12, 2011